[PITTSBURG, 1827.]

## M'DONALD *against* LINDALL.

### IN ERROR.

The lien of a mechanic under the act of 17th *March*, 1806, and its supplements does not extend beyond the description of the property in the claim filed.

Where therefore a claim is filed against a building, and the lot on which it is erected, without more, the lien does not extend to the adjoining ground as appurtenant to the building.

A right of way from necessity extends to a single way. It is always from *strict necessity* and this necessity cannot be created by the party claiming the right. It never exists where a man can get to his property through his own land however inconvenient the way through his own land may be.

How far the concealment or not giving notice of a claim to land, or to a right of way through another's land, will prevent the subsequent assertion of such claim.

WRIT of error to the Court of Common Pleas of *Allegheny* county. The opinion of the court was delivered by

HUSTON, J.—The plaintiff here, was plaintiff below, and brought this ejectment to recover part of lots Nos. 177 and 158, in the city of *Pittsburg*.

The facts given in evidence, and not disputed, made the following case :—*William Hamilton* in 1817, was the owner of lots Nos. 176, 177, 158 and 159, in the city of *Pittsburg*. The four lots adjoined, and formed together a parallelogram. The two first fronted on *Front* street, and the two last on *Water* street. Nos. 176 and 159 were exactly

(M'Donald *v.* Lindall.)

opposite each other, and extended from *Front* to *Water* street. No. 177 adjoined No. 176, and No. 158 adjoined No. 159, and Nos. 177 and 158 were exactly opposite each other, and extended from *Front* to *Water* street. *William Hamilton* contemplated building a house for a tavern, and very extensive back buildings, stables, &c. and in 1817, contracted with *Paul Anderson* to erect all the buildings. The articles of agreement referred to a plan.—This plan called No. 1, was not produced; it was agreed that a great part of it was relinquished. The walls and roof of the house and a back building, were erected by *Anderson.* These were occupied and floored for a counting and warehouse by *W. B. Foster*, under a lease from *Hamilton.* The house occupied the whole front of lot No. 176 on *Front* street. The back building and a yard before it occupied the residue of lot No. 176, and also covered a part of Nos. 177, 158 and 159. From this building there was then no passage to *Front* street, except through the house, or over a part of lot No. 177, but the whole of lot No. 159, not covered by this building, was unbuilt on, and might in whole or part, have been used as a passage from this building to *Water* street.

*Anderson* on the 20th of *February*, 1818, filed his lien as hereinafter recited, and along with it, the articles of agreement before mentioned, with *Hamilton*, and his account. The articles referred to a plan, but no plan was filed. In fact, that plan is agreed to have been abandoned by both parties.

Soon after this lien was filed, *M'Clurg* obtained a judgment against *Hamilton*; *Beldane* another judgment, and *Ansheets & Rham* another. *Anderson* purchased these three which were next in priority to *his* mechanic's lien. After these, many other judgments were obtained by other creditors of *Hamilton*, who became totally insolvent, and died in 1820.

*Anderson* sued a *scire facias* on his lien as a mechanic, and obtained judgment and issued execution, on which he made a levy in these words,—" Levied on all the right, title and interest of *William Hamilton* to a large brick ware-house fronting on *Water* street, joining *John Kelly*, and occupying a part of lots Nos. 176, 177, 158 and 159, subject to a ground-rent of two hundred dollars." A levy was also made on *M'Clurg's* (now become *Anderson's*) judgment on the four lots, in the words hereinafter recited.—

It was proved by Mr. *Neville*, then sheriff, that both these levies were made under the direction, and agreeably to the direction of *Anderson* and his attorney.

No. 83 to *August*, 1822, was a *venditioni exponas* on the mechanic's lien judgment; the advertisement conformed to the levy, and on it a sale was made on the 6th of *June*, 1822, to *Anderson*, and a deed acknowledged 15th of *August*, 1822.

No. 85 to *August*, 1822, was a *venditioni exponas* on *Anderson's* judgment in the name of *M'Clurg*; the advertisement conformed to the levy, and on it a sale was made on the 10th of *June*, 1822, of lot No. 159, to *Anderson*, for three hundred and fifty dollars; and of lot

(M'Donald *v.* Lindall.)

No. 177 for five hundred and sixty dollars, and of lot No. 158 for four hundred dollars, to *John M'Donald* the plaintiff. Deeds were executed and acknowledged to the purchasers the 17th of *August*, 1822. It was proved that *Anderson* was present and directed the sale, and the order in which the lots should be sold; that he bid for each of the beforementioned lots at the sale, and bought one, viz. No. 159: That during this time, he made no mention of any claim to any of the beforementioned lots;—but when lot No. 176 (covered by the house and back building and a fenced yard) was set up, he refused to bid, and said it was his own already.—I shall recur to the testimony on this point again. *Anderson* called on the sheriff to return his writs: the money was paid; *Anderson* claimed it on his judgment beforementioned:—The court ordered it to be paid first to a ground-rent, and after, according to priority of lien, and *Anderson* got it,—whether on his mechanic's lien or judgment did not appear.

Soon after *Anderson* claimed the whole of lots Nos. 177 and 158, as well as Nos. 176 and 159, by virtue of the sale to himself on the mechanic's lien. *M'Donald* brought an ejectment, and the jury found a verdict in these words; " We find for the plaintiff the western part of lots Nos. 177 and 158, bounded by *Water* street and by lot No. 178 and lot No. 157 and *Front* street, up to a four feet wide alley running through from *Water* street to *Front* street as marked on the diagram filed; the alley to be forever in common between the parties; with six cents damages, and six cents costs, and for the residue we find for the defendants."

This verdict and the charge of the late President of the Common Pleas, which was repeated by the President on the present trial, are thus necessarily noticed here. Judgment was entered on that verdict. The present suit is brought to recover the whole of the alley and eleven feet on the eastern side of it, being part of lot No. 158, which by the former verdict and judgment, were given to *Anderson*.

Many points were raised and discussed during the argument, not necessary to be decided, and which therefore we do not decide. The acts of assembly under which this question arises, have been extended to many parts of the state. Many questions have arisen, and more will arise. When a point arises directly in a cause, it may be expected it will be more fully considered by the counsel, than when it is started incidentally and is not material to the cause trying.

The doctrine of what passes as an appurtenant, and of a way from necessity, and the effect of a sale by one, or in the presence of and for the benefit of one who claims a right in the property sold and conceals such claim from the purchaser, must, to a certain extent, be considered. Strictly speaking, land cannot be appurtenant to land, or to a messuage, of which land, being the *substratum*, is the principal part in the consideration of law. But so long ago as the time of *Plowden*, it was decided that the intention of the parties, and the meaning in which words were used, should govern, and that the expression " appertaining to the messuage" shall be taken in the sense

(M'Donald v. Lindall.)

of " usually occupied with the messuage," and where the quantity of land is mentioned, is good in a plea, &c.  *Plowden*, 85. 171. *b*.  The word messuage, or the word appurtenant, are not used in the lien filed, the levy, or advertisement.  The words are " all the right title interest and claim of *William Hamilton* to the large brick ware-house fronting on *Water* street, joining property of *John Kelly*, and occupying part of four lots, Nos. 176, 177, 158, 159, subject to a ground rent of two hundred dollars."  It is, however, contended, that as the back building is shut out from any passage to *Front* street by the house, a right of way to *Front* street passed as appurtenant to the house, and a right to all the land on the opposite side of the house and lying between it and *Water* street, and this last, although the owner of the house has purchased and owns the whole of lot No. 159, which lies between that building and *Water* street.  A new house not yet finished, and of which it cannot be told what use it will be put to, can hardly be said to have any land usually occupied with it.  It is true, while *Foster* occupied it as the agent for the Transporting Company, all that part of lot No. 159, and part of 158, lying between it and *Water* street, were used as a passage for wagons to and from it.  This continued but a short time, and had ceased long before either the levy or sale, since which we do not know how it has been used.  But the eleven feet of lot No. 158 given to the defendant, is not given as a way, so to be used in common ; it is given absolutely to *Anderson*.  If given as a way, the right of soil in fee would remain in the plaintiff, and if ever it became unnecessary as a way, *e. g.* if the building had been pulled down by the owner and put up on *Water* street, the plaintiff might have built on this eleven feet.  1 *Burr.* 143.  1 *Wilson*, 107.  2 *John.* 313. 357.  As it now stands, the defendant may cease to use it as a way, and may build on it.  The right of way from necessity, over the land of another, is always of *strict necessity*, and this necessity must not be created by the party claiming the right of way.  It never exists where a man can get to his property through his own land.  That a road through his neighbours would be a better road, more convenient, or less expensive, is not to the purpose; that the passage through his own land is too steep or two narrow does not alter the case.  It is only where there is no way through his own land, that the right of way over the land of another can exist.  How is this case ?  From *Water* street to this ware-house was the defendant's property, the whole breadth of lot No. 159, which is thirty-five feet.  The jury then ought to have been instructed, that a right of way from necessity could not exist in such a case.  It will not do on this ground to say, that using it as a ware-house, a six horse team could not come to the building and turn and go out on a breadth of thirty-five feet, and for the reasonable use of it as a ware-house more breadth was necessary, and the jury were to judge of what was reasonable. " So much of lots No. 158 and 177 as is covered by the ware-house, and as much more ground as you may deem necessary for the reasonable use of the building," are the words of the first charge, under

(M'Donald *v.* Lindall.)

which the jury gave fifteen feet, part of No. 158. This is adopted and repeated in the last charge on a trial in which the right to these eleven feet is in issue. The whole court agree that there was error in the charges, in directing the jury that they might give the fee of this eleven feet, part of lot No. 158 to the defendant. See 2 *Johns.* 357.

How far the words of the description in the lien filed can go, in affecting property, contiguous to, and not covered by the building, or whether the law, and it only, must decide the extent of lien where words would embrace more than the law gives, we do not now decide, or lay down as a general rule to extend to all possible cases, but as the lien is given for the security of the mechanic, and it is ordered to be filed as notice of the claim to others, it would seem that the lien cannot extend beyond the description of the property in the paper filed; for as to property not within the description, it gives no notice. There was a plan referred to in the articles, which we have seen at the argument, but which was not filed with the lien. In the similar case of a mortgage, which described the property in words and referred to a plan, which plan embraced property not comprised by the words, and which plan was not recorded with the mortgage, the Supreme Court of the *United States,* have decided that only the lands described in the words of the mortgage pass. Those additional lots appearing only in the plan do not pass. 7 *Cranch,* 48.

The plan then referred to in the articles and the roads, passages &c. which it exhibited, are out of the case. The lien mentions a lot and a building; it is confined to that lot and that building—and at farthest if there was an alley laid out and used from the back building along the end of the front house, to a right of passage along that alley.

A right of way from necessity only extends to a single way. That a person claiming a way from necessity has already one way, is a good plea, and bars the plaintiff. 3 *Com. Dig. Chemin,* D. 4.

There cannot then be a way from this back building to *Front* street and another to *Water* street.

In my opinion, the fact that *Anderson* owns No. 159, which extends from *Water* street, to the back building, would of itself preclude him from any claim to even a right of way over the lot of another on that side.

Admitting however, what in my mind is inadmissible, that *Anderson's* lien might have entitled him to some parts of the adjoining lots, he has, if the witnesses are believed, precluded himself from all claim to them by his conduct. I know of no principle better settled, or the justice of which is more obvious, than that if at the time a sale is going on any person represents the right or the extent of the right to be in a certain way against him, the right shall be as represented—If then the jury shall believe, that *Anderson* on his executions on the judgments, directed the levy on lots No. 177, 158, 159, 176; that he was present at the sale; refused to permit a postponement of the sale;

(M'Donald *v.* Lindall.)

directed the order in which in point of him the lots should be sold, first, No. 177, then 158, then 159; that he bid for each of these lots and purchased the last; that he made no claim of any title to any of *these,* but that when No. 176, was set up he did claim it and refused to bid for it; that he called for and got the price of the two lots parts of which are now in question, in my opinion it is contrary to every principle of justice and equity as settled in courts and in the minds of honest men, that he should get first the price, and then the lots; and if he cannot get the lots, he cannot any part of them, except what was expressly mentioned in his lien, levy and sale on it, *viz.:* the part covered by the building, and I think the jury ought to have been so instructed. I do not consider *Weidman's* testimony as at all conflicting with that of the sheriff, and *Brackenridge;* the conversation he heard was while lot No. 176 was selling.   The sheriff agrees with him, that *Anderson* gave notice of his claim to that.   Now if that lot was sold last, *Weidman* and he agree, and *Weidman* does not contradict the sheriff's statement, that *Anderson* gave no notice of his claim to the other lots; of this too, it must be left to the jury to judge.

My own opinion is, that on his claim as filed, he had a lien only on lot No. 176, covered by the building, together with the building and such part of the other lots as was covered by it; that having a way, though an inconvenient one, through the front house to the back building, he had no right from necessity to any other way to it; that when he himself sold the adjoining lots, if any of them were essential to the more beneficial use of the building, he ought to have bought such; that having directed the sale of them and received the price he cannot now claim them or any part of them, and that such direction ought to have been given to the jury.

GIBSON, C. J. and DUNCAN, J. concurred.

ROGERS, J. dissented.

Judgment reversed and a *venire facias de novo* awarded.