## Ogden *et al. versus* Grove.

*Right of Way by Necessity.*

A right of way by necessity through an alley over another's land, does not exist where the party claiming it has an outlet over his own land.

ERROR to the District Court of *Philadelphia.*

This was an action of trespass *vi et armis*, &c., brought by Henry Grove, the defendant in error, who was the plaintiff below, against David C. Ogden and Samuel Ogden, the plaintiffs in error and defendants below, for the purpose of trying the. right of the plaintiffs to use a certain alley way between two lots of ground, situate on the east side of Third street, in the city of Philadelphia, above Race street. The northernmost of these lots is owned by the plaintiffs in error, and the other by the defendant in error.

The plaintiff declared for a trespass committed upon his lot, to which the defendant pleaded not guilty, with leave, &c. The case was tried, and under the charge of the court, the jury rendered a verdict for the plaintiff, upon which verdict judgment was duly entered.

The case was this:—Catharine Dannaker, by indenture made November 30th, A. D. 1831, conveyed the two lots, now owned by the defendant in error, on the east side of Third street, above Race, in the city of Philadelphia, and the adjoining lot on the north, now owned by the plaintiffs in error, to her son, Christian A. Dannaker. It was admitted on the trial that both parties claim under him.

The lot of the plaintiffs in error (No. 3 on plan) is twenty-six feet by one hundred and ninety-five feet.· There are two four story stores erected upon the plaintiff's lot, covering the whole front, and with a small yard in the rear, extending to the depth of eighty-nine feet. Behind this yard there is a small storehouse extending entirely across the lot and about sixteen feet in depth. Behind this there is another storehouse, fifty feet in depth, on the north side, extending to the line of the adjoining property, while on the south there is a paved yard between it and lot No. 2, of about eight feet in width; on the rear end of the lot there is a stable about forty feet in depth, extending across the lot of both plaintiff and defendant. In 1845, before the giving of the mortgages under which the defendant in error claims, these buildings stood in the same position .as they do now, with the exception of the stable on the rear end of the lot, which had not then been erected. There has never been a fence between the small paved yard adjoining the second storehouse

and the adjoining lot to the south, but the whole yard has been open and used by this and the two adjoining lots to the south. In 1845, there were buildings on both of the lots now owned by defendant in error (Nos. 1 and 2); on No. 1, a building covering the whole front of the lot, and the one on No. 2, built up to plaintiff's line on the north, while on the south side of this lot there was an alley eight and a half feet in width; the latter. building was used as a hotel. This alley was used for all three of the lots. The buildings on the lot of the plaintiffs in error, with the exception of the stores on the front, had no outlet except over this alley, and it had been used in common with the other lots for many years. Dannaker himself used one of them for some time as a workshop.

On November 12th 1845, Dannaker gave a mortgage of lot No. 1 to Charles S. Coxe, trustee, and by proceedings under this mortgage, the title became vested in Henry Grove in 1858. On December 17th 1845, Dannaker gave a mortgage of lot No. 2 to Robert Hare and Horace Binney Wallace, and by proceedings under the latter mortgage, the title to No. 2 also became vested in the said Henry Grove in 1858.

In 1846, after giving the two above-mentioned mortgages, Dannaker took down the two buildings on lots Nos. 1 and 2, and erected thereon the Eagle Hotel, covering the whole front of both of the lots, leaving a covered alley way eight feet in width on the north, and in this position the buildings have remained ever since. This alley has been used by the persons occupying the lots of both plaintiff and defendants, and is the one in which the trespass is alleged to have been committed.

On the 19th day of May, 1853, Christian A. Dannaker gave a mortgage of lot No. 3 to Joseph Ogden, and by proceedings under the last-mentioned mortgage, the title to lot No. 3 became vested in the plaintiffs in error in 1858. The plaintiffs in error continued to use the alley existing at present, and to test their right so to do the present action was brought.

The counsel for the defendants requested the learned judge to charge the jury, " That the defendants have a right of way of necessity over the premises in dispute, at least so long as the way of necessity, existing at and before the time of making the mortgage under which the plaintiff claims, continues to be closed up by or with the consent of plaintiff."

The judge charged the jury as follows:—

" Gentlemen of the jury, you will find a verdict for the plaintiff."

Under this charge there was a verdict and judgment in favour of plaintiff, whereupon the defendants sued out this writ, and assigned for error here:

1. That the court erred in refusing to charge the jury, that

the defendants have a right of way of necessity over the premises in dispute, at least so long as the way of necessity, existing at and before the time of making the mortgages under which the plaintiff claims, continues to be closed up by or with the consent of plaintiff.

2. The court erred, in directing the jury to find a verdict for the plaintiff.

3. The court erred, in charging the jury, "Gentlemen of the jury, you will find a verdict for the plaintiff."

*John S. Powell,* for plaintiffs in error.—The mortgage on No. 3 covered the lot "with all and singular the buildings, ways, waters, water-courses," and it was conveyed by the sheriff, "with the hereditaments and appurtenances," to the plaintiffs in error, which gives them the alley way now open and which was open before and at the time of this mortgage, and used all the time by the tenants and occupiers of this lot. But if this were not so, plaintiff claims a right of way of necessity, as an incident of ownership which is founded on an implied grant: Co. Litt. 56 a; Woolrych on Ways 20; 2 Greenleaf's Cruise Digest 28, n. 2.

This right does not require an absolute physical necessity: Nichols *v.* Luce, 24 Pick. 104. The necessity arises from the construction and situation of the buildings on the plaintiffs' lot, as placed by C. A. Dannaker.

The two stores on Third street, with the yard in the year, extend back eighty-nine feet. Behind these the lot extends one hundred and six feet further, and is occupied by the two storehouses and the stable, for which there is no outlet but this alley. To close it would render them useless, unless an outlet were made through the front portion of the lot into Third street, to do which would destroy one of the stores, the cost of which makes their claim to this way almost an absolute physical necessity.

This right may be implied in favour of a grantor as well as a grantee: 2 Greenleaf's Cruise 28, n. 2; Clark *v.* Cogge, Cro. Jac. 170; Packer *v.* Welsted, 2 Sid. 39; Jorden *v.* Attwood, Owen 121; Dutton *v.* Taylor, 2 Lutw. 1487; Nelson's Lutw. 477; 5 Casey; Buckby *v.* Coles, 5 Taunt. Dannaker would have retained this right if he had remained tenant of this lot.

When the mortgages under which defendant claims were given, there was no alley way on the north of defendant's lots; but the alley between the two lots led into an open yard which was used by the occupiers of the three lots, but there never was any fence separating the portion of the lots not built upon. The occupier of the rear portion of plaintiffs' lot had no other outlet at all, which compelled the purchaser to take subject to this

right of way, burthened or benefitted by it: Seibert *v.* Levan, 8 Barr 383. Dannaker had a right to close the old alley and open the new one in 1846, when he built the hotel, because he was owner, and the mortgages given by him were only pledges for the debts secured by them. This change authorized those who had used the old way, to use the new one: Horne *v.* Wild-lake, Yelv. 141; Farnum *v.* Platt, 8 Pick. 339.

*Charles E. Lex*, for defendants in error.—The mortgages made in 1845, under which defendant in error claims by virtue of a sheriff's sale, show that there was then no alley way on the south side of the lot owned by plaintiffs in error.

When the mortgage in 1853 was made, under which plaintiffs in error claim title, there was no right of way contemplated in the open passage now on the premises of defendant in error, although between 1848 and 1853 the passage way was shifted from its original location between the lots now owned by defendant, to its present location south of plaintiffs' lot.

The sales under the mortgages and the sheriff's deeds remits the defendant to the position of the lots as they were when the mortgages were made, so that he took the entire fee without any right of way in any other person. The mortgages convey the fee in the entire soil covered by the description, embracing even the passage way as it existed in 1845.

The plaintiffs' title is under the mortgage of 1853, in which the mortgagor, knowing that the prior mortgagees owned the soil up to plaintiffs' southern boundary, abstained from granting in it a right of way in the alley he had opened since 1845.

This has driven the plaintiff to claim this *ex necessitate;* but this claim is entirely destroyed by the ruling of this court in McDonald *v.* Lindell, 3 Rawle 492, inasmuch as he has a front on Third street.

The opinion of the court was delivered, March 25th 1861, by

Thompson, J.—A right of way by grant was not much insisted on in this case, nor could it have been with much plausibility. No doubt a right of this sort will pass as an appurtenant, provided it is so in fact. But in the mortgage, which is the foundation of the title of the plaintiff in error, no such right was reserved. In fact, this could not have been done, as the property south of it belonging to the same party, had been previously mortgaged without any reservation of a right of way in favour of that lot. That is the property of the defendants in error.

Under these circumstances, the plaintiffs in error were forced to claim a right of passage through the alley in question as a right of way from necessity. The answer to this was obvious. They had a front on Third street of twent -six feet in width, and

[Ogden *et al. v.* Grove.]

therefore could find their exit from the rear of their lot through their own ground.

"The right of way from necessity over the land of another," says Huston, J., in delivering the opinion of the court in M'Donald *v.* Lindell, 3 Rawle 493, "is always of strict necessity, and the necessity must not be created by the party claiming the right of way. It never exists, when a man can get to his own property through his own land." See also, Woolrich on Ways 17.

The usual instances of a right of way from necessity to be found in the books, are where there have been grants of land surrounded on all sides by other lands of the grantor, or by his lands and those of strangers, then if no outlet exists otherwise, then it will be a way of necessity over the grantor's land. So will it be if the grantor retain the interior, and grant away the exterior land; Woolrich 20.

Convenience is no foundation for the claim, nor is actual detriment to the possession of the claimant resulting from a necessity of a way through his own property, any reason to claim it through that of a neighbour. As the plaintiffs in error can undoubtedly have a way over their own ground to Third street, they cannot claim one as of necessity from any other owner. We think the court was right, under the evidence, in instructing the jury as they did.

Judgment affirmed.