**[J-32-2019] [MO: Wecht, J.]**

**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

| | | |
|---|---|---|
| THADDEUS BARTKOWSKI, III AND CRYSTAL ANNE CRAWFORD, | : | No. 60 MAP 2018 |
| | : | |
| | : | Appeal from the Order of the Superior |
| Appellees | : | Court at Nos. 432 EDA 2017 and 521 |
| | : | EDA 2017 dated January 22, 2018, |
| | : | Reconsideration denied March 22, |
| v. | : | 2018, Affirming in part and Vacating in |
| | : | part the Judgment of the Chester |
| | : | County Court of Common Pleas, Civil |
| KENNETH RAMONDO AND THERESE-CECILIA RAMONDO, | : | Division, at No. 15-05842 entered |
| | : | January 27, 2017 and Remanding. |
| | : | |
| Appellants | : | ARGUED: April 11, 2019 |

**CONCURRING AND DISSENTING OPINION**

**JUSTICE DOUGHERTY**                                   **DECIDED: October 31, 2019**

I agree with the majority that the standard of strict necessity does not require a party to prove impossibility. *See* Majority Op. at 15. However, the majority also holds a landowner can demonstrate strict necessity if means of ingress and egress over his own property is "manifestly impracticable." *Id.* at 17. Specifically, the majority rules a landowner can prove strict necessity by showing he is unlikely to obtain required zoning variances, or there is a lack of "practicability" to construct alternate access over his own property. *See, e.g., id.* at 20-21 (supplying factors to be considered in determining whether landowner established strict necessity). I cannot agree with this application of the "strict necessity" test in the present factual scenario. Although the majority states it does not "intend to dilute or diminish the rigors" of the applicable standard, *id.* at 21, in my view, the majority swings the pendulum too far in the opposite direction on the "continuum" between "strict necessity and mere convenience." *Id.* at 15.

Citing the jurisprudence of other jurisdictions, the majority now rules that a party may demonstrate the requisite strict necessity "[w]here it is manifestly impracticable, even though theoretically possible, to create ingress and egress across one's own property[.]" *Id.* at 16-17, *citing Ashby v. Maechling*, 229 P.3d 1210, 1215 (Mont. 2010); *Beery v. Shinkle*, 193 S.W.3d 435, 441 (Mo. Ct. App. 2006); *Thompson v. Whinnery*, 895 P.2d 537, 541 (Colo. 1995) (*en banc*); *Hitchman v. Hudson*, 594 P.2d 851, 858 (Or. Ct. App. 1979). This new standard is unsupported by our own case law and improperly dilutes the burden of establishing an easement by necessity.

"An easement by necessity is always of **strict necessity**." *Phillippi v. Knotter*, 748 A.2d 757, 760 (Pa. Super. 2000) (emphasis in original), *citing Graff v. Scanlan*, 673 A.2d 1028, 1032 (Pa. Cmwlth. 1996). "An easement by necessity never exists as a mere matter of convenience." *Id.*, *citing Possessky v. Diem*, 655 A.2d 1004, 1010 (Pa. Super. 1995). "Further, an easement by necessity does not exist when an owner can get to his own property through his own land, and the necessity must not be created by the party claiming the easement." *Graff*, 673 A.2d at 1032, *citing Ogden v. Grove*, 38 Pa. 487 (1861).

*Ogden* provides particularly instructive historical precedent. Ogden and Grove purchased adjacent lots from a common owner, Dannaker; Grove bought lots 1 and 2, while Ogden bought lot 3. Prior to the severance and sale, Dannaker had constructed two buildings on what became lot 3; these buildings covered the entire twenty-six foot street frontage and blocked access to the public road. In order to access the road from what became lot 3, Dannaker had used a paved alleyway located entirely on what became lot 2. Initially, the paved alleyway was used by both Ogden and Grove, but eventually Grove sued Ogden for trespass, arguing Ogden had no right to use it. Ogden responded by claiming he had a right of way over the alley through an easement by necessity, which

existed at the time of severance by Dannaker, and continued at the time of Grove's lawsuit.

This Court ultimately rejected Ogden's argument, holding an easement by necessity "never exists[] when a man can get to his own property through his own land." *Ogden*, 38 Pa. at 491, *citing McDonald v. Lindall,* 3 Rawle 492, 493 (Pa. 1827). The Court reasoned where landowners "undoubtedly have a way over their own ground to [the public road], they cannot claim one as of necessity from any other owner." *Id.* In fact, the only way Ogden "undoubtedly" could reach the public road was through alteration or destruction of one of the buildings fronting the public street located on his own lot. *Id.* at 489-90. *Ogden* thus stands for the proposition a property owner may **not** establish an easement by necessity if there is no doubt he can access the public road through his own property. *See also Graff*, 673 A.2d at 1032 ("[A]n easement by necessity does not exist when an owner can get to his own property through his own land, and the necessity must not be created by the party claiming the easement.").

In this case, at the time the properties were divided, the Teafs clearly provided the Ramondo parcel with a twenty-five foot-wide "flagpole" connecting the property to Garret Mill Road. Obviously, then, the Ramondos' property was not landlocked. Instead, the question is whether the condition and quality of the Ramondo flagpole connection — **both at the time of severance and at the time of the current controversy** — effectively denies access to the public road. *See Youst v. Keck's Food Serv., Inc.*, 94 A.3d 1057, 1075 (Pa. Super. 2014) (easement by necessity requires necessity "both at the time of the severance of title and at the time of the exercise of the easement").

In discussing the strict necessity standard, the majority opts not to address the well-established requirement that the necessity for the easement had to exist at the time of severance by the Teafs. The majority refers to Judge Bowes's dissenting opinion

below, which was similarly limited, without legal citation or record support, and included the conclusory statement that "the necessity existed at the time of severance, given that the steep slope, stream, and flood plain were present on the Ramondos' pole when the Teafs subdivided their property[.]" *See* Majority Op. at 20-21 n.16, *citing Bartkowski v. Ramondo*, 2018 WL 495213, at *10 (Pa. Super. filed Jan. 22, 2018) (Bowes, J., dissenting). As Justice Mundy aptly notes, the existing record does not support a finding the necessity existed at the time of severance in 1967. *See* Dissenting Op. at 4 n.1.

In my view, as the existence of strict necessity at the time of the severance is an essential element in the applicable analysis, we must consider it. In this case, the Ramondos should have the burden on remand of proving the many obstacles they have identified as preventing their access to Garrett Mill Road — including the topography and slope of their flagpole, the purported zoning and environmental restrictions, location of the stream, and location of utilities — also existed at the time of the Teafs' subdivision. Moreover, the Ramondos must demonstrate they did not create the current necessity themselves. *See Ogden*, 38 Pa. at 491 ("the necessity must not be created by the party claiming the right of way"). The existing record indicates the Ramondos installed their driveway at its present location, and Mr. Ramondo testified he "cut the driveway in" with an excavation contractor. *See* N.T. from Prelim. Injunction Hearing at 63-64. It is not clear from the record whether this excavation and construction impacted the slope and flood plain of the flagpole, such that the present necessity did not exist when the Teafs subdivided the land.

The majority states that, on remand, there must be a consideration of several factors to determine if a landowner has established necessity including, but not limited to: "the likelihood that the party can obtain the necessary [zoning] variances or exceptions; the existence of state or federal regulations that prohibit certain uses of the land in

question; the topography of the land and the practicability of constructing alternative access; the environmental consequences of construction; [and] the costs involved[.]" Majority Op. at 19-20. Respectfully, contrary to the majority's statement the Ramondos have a "daunting hurdle" to overcome in order to establish an easement by necessity, the majority's description of strict necessity reduces that burden. *Id.* The question is not one of mere "likelihood" or "practicability;" it must be one of strict necessity.

I recognize the Ramondos' expert opined securing certain township and agency approvals would be "difficult" and "highly unlikely" to achieve. *Id.* at 6, *citing* Ex. 19 at 1-3. However, in my view, showing "strict necessity" requires more than speculating about "difficult" obstacles which are "highly unlikely" to overcome. The record is completely devoid of zoning applications or inquiries addressed to the township or FEMA, for example. I would hold the Ramondos have not established "strict necessity" if the record shows they "undoubtedly" have access to the public roadway over their own land.